# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

DAMIAN CARLTON,

|                        |   |                          |
|------------------------|---|--------------------------|
| Petitioner,            | : | Case No. 1:20-cv-1030    |
| - vs -                 |   | District Judge Douglas R. Cole |
|                        |   | Magistrate Judge Michael R. Merz |
| WARDEN<br>  London Correctional Institution, | | |
|                        | : |                          |
| Respondent.            |   |                          |

# REPORT AND RECOMMENDATIONS

This habeas corpus case, brought *pro se* by Petitioner Damian Carlton under 28 U.S.C. § 2254, is before the Court for decision on the merits. Assigned to the case under 28 U.S.C. § 636(b)(1)(B), the Magistrate Judge is obliged to provide the District Court with proposed findings of fact and a recommendation for disposition of the case. That recommendation is subject to *de novo* review by the District Judge upon substantial objection by any party.

## Litigation History

On September 11, 2014, the Hamilton County grand jury indicted Carlton for aggravated burglary with two firearm specifications in violation of Ohio Rev. Code § 2911.11(A)(2) (count 1) and two counts of felonious assault in violation of Ohio Rev. Code § 2903.11(A)(1) and (A)(2) (counts 2

1

& 3). (Indictment, State Court Record, ECF No. 31, Ex. 1[1]).  A trial jury convicted Carlton of the substantive offenses, but acquitted him on the firearm specifications.  The trial judge merged the two felonious assault convictions under Ohio Revised Code § 2941.25, then sentenced Carlton to eleven years for aggravated burglary and eight years for felonious assault, with the terms to be served consecutively (Sentencing Entry, State Court Record, ECF No. 31, Ex. 4).

Represented by new counsel, Carlton appealed to the First District Court of Appeals, asserting (1) there was insufficient evidence to support the verdict or that the verdict was against the manifest weight of the evidence and (2) the verdicts were inconsistent in that the jury convicted him of aggravated burglary but acquitted on the firearm specifications (Appellant's Brief, State Court Record, ECF No. 31, Ex. 5).  The First District decided the First Assignment of Error as follows:

> In his first assignment of error, Carlton argues that his convictions for felonious assault and aggravated burglary were not supported by sufficient evidence and were against the manifest weight of the evidence, and that the trial court erred in denying his motion for an acquittal.  The evidence presented at trial established that Carlton had met Kristin Ivory on a chat line and arranged to meet her in person. The two met for the first time at Ivory's apartment on July 21, 2014. While Carlton was there, Ivory showed him approximately $500 that she had been saving to purchase a new automobile. Carlton left Ivory's apartment at midnight, but he returned around 7:00 a.m. the following morning, asking to use her telephone to call for a ride. When Ivory opened the door for him, Carlton pulled out a black handgun and entered with another assailant. Carlton demanded that Ivory give him her money. He repeatedly struck her in the face with his handgun and choked her while his accomplice searched her apartment. Carlton left with Ivory's cellular telephone and her watch. Ivory suffered numerous injuries, including the permanent loss of vision in her left eye.
>
> Following our review of the record, we find that, when viewing the evidence in the light most favorable to the prosecution, the jury could reasonably have found the elements of felonious assault under R.C. 2903.11(A)(1) and aggravated burglary under R.C. 2911.11(A)(2) proven beyond a reasonable doubt. See *State v.*

---

[1] To facilitate reference, the Court has ordered the original State Court Record from Carlton's prior habeas corpus case, 1:18-cv-387, re-docketed in this case where it appears at ECF No. 31.

*Martin*, 20 Ohio App.3d 172, 175, 20 Ohio B. 215, 485 N.E.2d 717
(1st Dist.1983).

*State v. Carlton,* 2016 Ohio App. LEXIS 2984[2] (1st Dist. Jun. 22, 2016), appellate jurisdiction

declined, 149 Ohio St. 3d 1409 (2017)[3].

On September 20, 2016, Carlton applied under Ohio R. App. P. 26(B) to reopen his direct

appeal, claiming he received ineffective assistance of appellate counsel when his appellate attorney

omitted the following assignments of error:

> 1. The trial court erred by not allowing into evidence statements
> made by the complaining witness contained in the affidavit for
> search warrant this violated U.S.C. A. 14th Amend. due process and
> equal protection.
>
> 2. The appellant was denied his Sixth Amend. Right to counsel on
> his appeal as of right, which appellant counsel failed to impeach
> witness with admissible impeaching evidence.
>
> 3. The appellant was denied his Sixth Amend. Right to effective
> assistance of counsel failed to impeach the correct witness.
>
> 4. The trial court erred by not disclosing exculpatory evidence of
> impeachment nature, pursuant to Ohio R. Crim.R. 16(B)(1)(F), to
> violation U.S.C.A. 14th Amend. Due process and equal protection
> of the law.

(Application, State Court Record, ECF No. 31, Ex. 8).  The First District denied the Application,

holding:

> In his first and third proposed assignments of error, Carlton contends
> that the trial court erred in excluding from evidence statements in
> the victim's affidavit in support of a search warrant that were
> inconsistent with her trial testimony, and that his trial counsel was
> ineffective in failing use those statements to impeach the victim.
>
> In his fourth proposed assignment of error, Carlton alleges
> prosecutorial misconduct in failing to disclose to the defense the
> complete incident report compiled by the police. Because these

---

[2] The LEXIS citation is given because the judgment entry was not officially published.
[3] The Return of Writ asserts Carlton did not appeal to the Supreme Court of Ohio (ECF No. 28, PageID 1369). However, the cited Ohio Supreme Court decision shows it was entered on appeal from the cited First District decision.

challenges depend for their resolution upon evidence outside the trial record, the appropriate vehicle for advancing them is a postconviction petition. See *State v. Perry,* 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), paragraph nine of the syllabus. Therefore, appellate counsel was not ineffective in failing to raise these challenges in Carlton's direct appeal.

In his fourth proposed assignment of error, Carlton further alleges prosecutorial misconduct in failing to include on the state's witness list two witnesses who testified during the state's case. And in his second proposed assignment of error, Carlton contends that he was denied the effective assistance of counsel by counsel's failure to impeach the victim with statements in her medical records that were inconsistent with her trial testimony. But Carlton cannot be said to have been denied his right to a fair trial, when the record makes apparent beyond any reasonable doubt that, in the absence of the alleged prosecutorial misconduct, the jury still would have found Carlton guilty, See *State v. Smith*, 14 Ohio St.3d 13, 14-15, 470 N.E.2d 883 (1984). Nor can he be said to have been denied his right to the effective assistance of trial counsel, when the record does not demonstrate a reasonable probability that: but for the alleged deficiency in trial counsel's performance, the result of his trial would have been different. See *Strickland* at 694; *Bradley* at paragraph three of the syllabus.

(Entry Denying Application, *State v. Carlton,* State Court Record, ECF No. 31, Ex. 11). On May 17, 2017, the Supreme Court of Ohio declined to exercise appellate jurisdiction. *Id.* at Ex. 14. Carlton filed his first federal habeas corpus petition May 31, 2018, which he then voluntarily dismissed without prejudice May 7, 2019. Case No. 1:18-cv-387.

On August 13, 2018, Carlton filed a motion for leave to file a delayed motion for new trial (State Court Record, ECF No. 27, Ex. 15). The trial court denied the motion as being without merit (*Id.* at Ex. 18) and Carlton did not appeal. He filed another motion for new trial January 8, 2019, claiming to be actually innocent, which the trial court likewise denied. *Id.* at Exs. 19, 20.

On November 30, 2018, Carlton filed a petition for post-conviction relief claiming actual innocence, ineffective assistance of trial counsel, and prosecutorial misconduct (Petition, State Court Record, ECF No. 27, Ex. 21, Amended Petition Ex. 22). The trial court denied both on

4

February 20, 2019. *Id.* at Ex. 23.  The State Court Record does not reflect any appeal.

On August 25, 2019, Carlton again sought leave to file a delayed motion for new trial (State Court Record, ECF No. 27, Ex. 36).  The trial court denied the Motion (*Id.* at Ex. 37) and Carlton appealed.   On September 30, 2020, the First District Court of Appeals affirmed denial of the motion for new trial.  In doing so, it held:

> Carlton supported his motion with "exhibits" consisting of pages one and six of the victim's medical records. He asserted that his trial counsel had been ineffective in failing to use those records to challenge the victim's competency to testify and to impeach her trial testimony. Those "exhibits" indicate that they were "generated" four months before trial. And the record shows that they were provided by the state in discovery and admitted into evidence at trial, and that the state and defense counsel examined the victim concerning them. The remaining challenges presented in the motion depended for their resolution upon "exhibits" that were not filed with the motion.
>
> Of the missing "exhibits," those that purportedly show the victim's criminal record were, according to the state's response to the defense's discovery demand, to be provided if the matter proceeded to trial, which it did. Those records were not made a part of the record before us, either at trial or as offered in support of Carlton's multiple postconviction petitions and motions. The rest of the missing "exhibits" were provided in discovery or made a part of the record before us when offered at trial or in support of prior postconviction petitions and motions. The evidence demonstrably provided in discovery or offered at trial cannot, by definition, be "newly discovered." And Carlton failed to provide with his Crim.R. 33(B) motion for leave an affidavit attesting to when or how he had secured any of the evidence offered as "newly discovered."

(Judgment Entry, *State v. Carlton*, State Court Record, ECF No. 27, Ex. 43, PageID 575-76).  The State Court Record does not show that Carlton ever appealed to the Supreme Court of Ohio from this decision.  The State Court Record contains a substantial number of additional post-conviction filings by Carlton which do not appear to be relevant to deciding this habeas corpus case.

Ordered by the Court to file an amended petition which complies with Rule 2 of the Rules Governing § 2254 proceedings, Carlton pled the following single ground for relief:

>**Ground One**: Petitioner was denied trial counsel a violation of Article 6 of the United States Constitution and the 14th amendment of the United States Constitution. Opportunity to be heard.
>
>**Supporting Facts:** Petitioner was denied trial counsel when trial counsel rendered ineffective assistance at petitioner's jury trial by failing to obtain favorable witnesses, and present favorable evidence on February 23 through the 26, 2015 at Hamilton County Court of Common Pleas violating petitioner's right to due process of a trial. Opportunity to be heard.

(Amended Petition, ECF No. 16, Page ID 2).

The Respondent filed a Return of Writ (ECF No. 28) which asserts the Petition is barred by the statute of limitations (PageID 1379-91), is procedurally defaulted (PageID 1396-1401), and is without merit (PageID 1391-96). Petitioner has filed a timely Reply (ECF No. 30), making the case ripe for decision.

**Petitioner's Reply**

Petitioner's Reply is devoted to attempting to show he is actually innocent, a showing which, if successful, would excuse both his untimely filing and procedural defaults along the way. *McQuiggin v. Perkins*, 569 U.S. 383 (2013); *House v. Bell*, 547 U.S. 518 (2006); and *Schlup v. Delo,* 513 U.S. 298 (1995). In developing his actual innocence claim, Carlton asserts the case turned on the credibility of the victim-witness, Kristen Ivory (Reply, ECF No. 30, PageID 1405). He notes that his habeas claim is that his trial counsel failed to present "exculpatory evidence." *Id.* at PageID 1406. Carlton explains:

>This new evidnce [sic],was in the discovery, but counsel's performance was deficient by violating professional norms of competence by not knowing these were hearsay exception[s] and therefore admissible under Ohio evidence rul&s [sic] and counsel

6

> should have explained that to Honorable West[4], fchen [then] tie [he] would have had no problem in letting the evidence[sic] be presenfced [sic]to the jury.

*Id.*  Carlton explains the presence of his DNA in Ivory's apartment by her having invited him to come over. *Id.* at PageID 1409.  Having quoted Ivory's testimony from both the transcript and the First District's opinion, he notes that his trial attorney, Mr. Goldberg, never introduced page six of Ivory's medical records into evidence.  That single page is now labeled Petitioner's Exhibit 1 (ECF No. 30-1, PageID 1456).  Carlton emphasizes he is not claiming a *Brady*[5] violation, but claiming ineffective assistance of trial counsel for failure to present this exhibit (Reply, ECF No. 30, PageID 1406).  He asserts the exhibit "is not just impeachment evidence, but it is exculpatory evidence, and exculpatory evidence is evidence of innocence, and factual innocence is evidence not presented to jury with a constitutional violation." *Id.* at PageID 1410.  He notes that the gun with which Ivory testified he beat her was never produced at trial, but the jury believed her testimony about it; had they seen Exhibit 1, they would not have believed her, Exhibit 1 would necessarily have created reasonable doubt. *Id.* at PageID 1414-15.  Carlton characterizes Exhibit 1 as "critical physical evidence." *Id.* at PageID 1418.  He claims Exhibit 1 was admissible under Ohio R. Evid. 805 or 803 and his attorney did not know this.

Exhibit 2 is the second page of a police incident report regarding the offenses in suit and contains a narrative report of the interview of the victim by Forest Park Police Officer Ronald Wilson on July 22, 2014, the morning after the incident (ECF No. 30-1, PageID 1457).  Carlton claims trial counsel should have explained to Judge West that Exhibit 2 was admissible in evidence under Ohio Revised Code § 2317.42 and Ohio R. Evid. 803(8) (Reply, ECF No. 30, PageID 1420.

---

[4] The Honorable John Andrew West, Judge of the Hamilton County Court of Common Pleas, who presided at trial.
[5] *Brady v. Maryland*, 373 U.S. 83 (1963).

Exhibit 3 is the Affidavit of Detective Cory Hall in support of a search warrant to obtain a DNA sample from Carlton by oral swab (ECF No. 30-1, PageID 1458).  Carlton emphasizes the inconsistencies between the facts recited in the Affidavit and Ivory's testimony at trial, particularly in that Hall believed Ivory said she was pistol-whipped by both Carston and his accomplice, whereas her trial testimony implicated Carlton alone (Reply, ECF No. 30, PageID 1422).  He claims trial counsel should have argued it was admissible under Ohio Revised Code § 2317.42 and Ohio R. Evid. 803(8) and 805. *Id.* at PageID 1723.

Carlton concedes this evidence was discovered at the time of trial, but not presented (except for Exhibit 1[6]) to the jury.  He argues new evidence under *Schlup* can consist of newly-presented evidence as well as newly discovered evidence. *Id.* at PageID 1426, relying on *Hamilton v. Gansheimer,* 546 F.Supp.2d 825 (N.D. Ohio 2008)(Zouhary, D.J.); and *Jones v. Calloway,* 842 F.3d 454 (7th Cir. 2016).

At PageID 1429-30, Carlton speaks of learning in prison about forgiving and forgives Ivory for lying on him.  He apologizes to his mother and wife and to those persons to whom he sold heroin and crack and "the men wifes I had sex with."  He avers that when released he will stop selling drugs.  He acknowledges he did not testify at trial, but avers he would do so in a new trial, making it his word against Ivory's. PageID 1432.

At PageID 1433, Petitioner begins an argument about the trial court's lack of jurisdiction. This claim, he says, is what prompted him to file a petition for an Ohio writ of habeas corpus in the Ohio Supreme Court.  Relying on *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938), he contends that a court which has jurisdiction at the commencement of trial can lose it by denying a defendant's right to counsel.  He asserts the holding of the Ohio Supreme Court in *Boszik v.*

---

[6] "[P]etitioner now realize [sic] that the medical record[s] were admitted into evidence; but the incident report and affidavit for search warrant Exhibit1s 2, and 3 were not." *Id.* at PageID 1426.

*Hudson,* 110 Ohio St. 3d 245 (2006), that an Ohio trial court does not lose jurisdiction because of claims involving denial of counsel or ineffective assistance of trial counsel and therefore such claims are not cognizable in habeas corpus is contrary to Supreme Court law clearly established in *Johnson*. *Id.* at PageID 1435.

Petitioner then argues he can show cause and prejudice for procedural default because he was not served with notice of the denial of his motions for new trial (Reply, ECF No. 30, PageID 1437-38).

Under the heading "Merits," Petitioner asserts "Petitioner was denied counsel at trial a violation of the United States Constitution 6th and 14th Amendments rending [sic] the judgment void due to a lack of jurisdiction." (ECF No. 30, PageID 1439). His evidence is that his trial attorney tried to cross-examine Detective Dryer about the content of the search warrant affidavit and Judge West would not permit it because the affiant was Officer Hall, not Detective Dryer.

# Analysis

## Statute of Limitations

The Warden asserts Carlton's Petition is barred by the statute of limitations, 28 U.S.C. § 2244(d), which provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of —
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The Supreme Court of Ohio declined jurisdiction over Carlton's direct appeal on May 17, 2017, and of his appeal from denial of his 26(B) application on the same day. His deadline for seeking review by the Supreme Court of the United States expired ninety days later on August 15, 2017. Because he did not seek certiorari review, his conviction became final on August 15, 2017, and expired August 15, 2018, unless some tolling event happened in the meantime. Carlton filed his first habeas corpus petition in this Court on May 31, 2018, but that filing did not toll the statute because a federal habeas petition is not a properly filed state collateral attack on the judgment. 28 U.S.C. § 2244(d)(2). *Duncan v. Walker,* 533 U.S. 167 (2001).

Two days before the statute expired, on August 13, 2018, Carlton filed a motion for leave to file a delayed motion for new trial (State Court Record, ECF No. 27, Ex. 15). Ohio sets no time limit on motions for leave to file delayed new trial motions and the trial court denied the motion as being without merit, rather than as not being properly filed, on August 16, 2018 (*Id.* at Ex. 18). Thus this Motion tolled the statute of limitations. Carlton's time to appeal expired September 15,

2018, and he did not appeal. Thus the tolling ceased September 15, 2018, and the statute expired two days later because it had been tolled when there were only two days left to run.

Carlton has filed numerous additional state post-conviction motions and petitions, but even though they may have been properly filed under Ohio law, they do not serve to re-start the federal statute of limitations. A properly filed collateral attack on a judgment tolls the statute of limitations, but does not re-start it. *Payton v. Brigano,* 256 F.3d 405, 408 (6th Cir. 2001).

Carlton does not argue for any other date on which his conviction became final. He filed his Petition in this case by depositing it in the prison mail system on December 22, 2020 (Petition, ECF No. 1, PageID 15). If the statute of limitations is calculated under 28 U.S.C. § 2244(d)(1)(a), the Petition was filed two years and three months after the statute expired.

Carlton seeks to excuse his delay by claiming he is actually innocent (Reply, ECF No. 30, PageID 1405, citing *House v. Bell*, 547 U.S. 518 (2006), and *Schlup v. Delo,* 513 U.S. 298 (1995). The Supreme Court has held that a showing of actual innocence which meets the *Schlup* requirements will excuse a late filing. *McQuiggin v. Perkins*, 569 U.S. 383 (2013). In *McQuiggin,* the Court held:

> [A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U. S., at 329, 115 S. Ct. 851, 130 L. Ed. 2d 808; see *House*, 547 U. S., at 538, 126 S. Ct. 2064, 165 L. Ed. 2d. 1 (emphasizing that the *Schlup* standard is "demanding" and seldom met). And in making an assessment of the kind *Schlup* envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. *Schlup*, 513 U. S., at 332, 115 S. Ct. 851, 130 L. Ed. 2d. 808.

*Id.* at 386-87.

Carlton's claim of actual innocence to excuse his untimely filing is without merit.

First of all, the kind of evidence on which he relies does not meet the *Schlup* standard.  In

*Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005), the Sixth Circuit held:

> [I]f a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims."  *Schlup v. Delo,* 513 U.S. 298, 316 (1995)." Thus, the threshold inquiry is whether "new facts raise[] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 140 L. Ed. 2d 828, 118 S. Ct. 1604 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321.

*Souter v. Jones,* 395 F.3d 577, 590 (6th Cir. 2005).

The evidence on which Carlton relies is all documentary evidence, exclusively relied on

by him to undermine the credibility of the victim-witness Ivory.  It is not exculpatory scientific

evidence; indeed it is not scientific evidence at all.

Similarly, it is not trustworthy eyewitness accounts.  The only eyewitnesses to the alleged

crime were the victim, Carlton, and the unidentified accomplice.  We have only Ivory's testimony;

neither Carlton nor the unidentified accomplice has provided sworn testimony.

Finally, it is not "physical" evidence, but only documentary evidence of what certain

persons may have said at various times. True, the statements have been reduced to writing and those writings are tangible. But that is not what *Schlup* means by "physical" evidence. The best example known to the Magistrate Judge is from *House v. Bell, supra.* There the petitioner had been identified as the rape-murderer because his blood was found on the victim's clothing. It was later learned that his blood sample had been shipped to the FBI laboratory in the same container as the victim's clothing and one of the vials had broken or spilled in route, providing an innocent explanation for why his blood was on the victim's clothing. In contrast, the "new" evidence relied on by Carlton consists entirely of statements of Ivory prior to trial which are alleged to be inconsistent with her trial testimony.

Secondly, the Court is not persuaded that this new evidence is such that, even if it had been considered by the jury, shows that no rational juror would have voted to convict. The jury was presented with persuasive evidence of Ivory's serious physical injuries which she testified Carlton inflicted. Her pre-trial identification of Ivory as the perpetrator was not shaken on cross-examination and his presence in her apartment was confirmed by DNA evidence. Carlton asserts she had been involved in a domestic violence incident with the father of her child, but when, resulting in what injuries? Carlton suggests no motive for Ivory to misidentify him.

The Magistrate Judge agrees with Carlton that the evidence not presented to the jury on which he relies does provide possibilities of cross-examining Ivory with prior inconsistent statements, but disagreed that they would have been strong enough to prevent a rational juror from voting to convict. The First District reached the same conclusion in denying Carlton's Application for Reopening:

> Nor can he be said to have been denied his right to the effective assistance of trial counsel, when the record does not demonstrate a reasonable probability that: but for the alleged deficiency in trial counsel's performance, the result of his trial would have been

different. See *Strickland* at 694; *Bradley* at paragraph three of the syllabus.

(Entry Denying Application, *State v. Carlton,* State Court Record, ECF No. 31, Ex. 11).

There is also a serious question whether the evidence on which Carlton relies constitutes "new" evidence as required by *Souter*.  Other than page six of Ivory's medical records, these documentary exhibits were not admitted in evidence, but Carlton concedes that they were all provided to defense counsel in pre-trial discovery, so that they are not newly-discovered.  Although there is a circuit split on the question, the Sixth Circuit's opinion in *Souter v. Jones,* 395 F.3d 577, 596 n.9 (6th Cir. 2005), suggests that newly presented evidence is sufficient.  *Cleveland v. Bradshaw*, 693 F.3d 626 (6th Cir. 2012); *Ogle v. Mohr*, 2016 U.S. Dist. LEXIS 89701 (S.D. Ohio 2016)(Sargus, Ch. J.).  However, in *Dufresne v. Palmer*, 876 F.3d 248 (6th Cir. 2017), the Sixth Circuit held that evidence (police reports) that could have been discovered by the exercise of due diligence before trial does not qualify as new evidence.  See *Clark v. Noble*, 2019 U.S. Dist. LEXIS 49689, at *49-50 (S.D. Ohio 2019), citing *Cleveland v. Bradshaw*, 693 F.3d 626, 633 (6th Cir. 2012) ("(noting that the Sixth Circuit has suggested that, in addition to 'newly discovered; evidence, 'newly presented' evidence constitutes 'new evidence' for purposes of the actual-innocence exception)".).

Even if "newly-presented" is sufficient, Carlton's new evidence could not be presented to a jury in the form he suggests.  The documents could form the good-faith basis for cross-examination of Ivory.  Ohio R. Evid. 607(B).  However, the documents themselves could not be given to the jury.  Ohio R. Evid. 613(B).

In sum, Carlton has not satisfied the *Schlup-McQuiggin* actual innocence standard and his Petition is therefore barred by the statute of limitations.

**Procedural Default**

Respondent asserts Carlton's claim of ineffective assistance of trial counsel is also barred by his procedural default in presenting it to the Ohio courts.

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). "Absent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'" *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000), quoting *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009). This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S.Ct. 1847, 158 L.Ed. d 659 (2004). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for

> presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman* [*v. Thompson*], 501 U.S. [722,] 731-732, 111 S.Ct. 2546, 115 L.Ed.2d 640 [(1991)]. The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine. See *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

*Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). "[A] federal court may not review federal claims that were procedurally defaulted in state courts." *Theriot v. Vashaw*, 982 F.3d 999 (6ᵗʰ Cir. 2020), citing *Maslonka v. Hoffner*, 900 F.3d 269, 276 (6th Cir. 2018) (alteration in original) (quoting *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017)).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Barton v. Warden, S. Ohio Corr. Facility,* 786 F.3d 450, 464 (6ᵗʰ Cir. 2015), *Guilmette v. Howes,* 624 F.3d 286, 290 (6ᵗʰ Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6ᵗʰ Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6ᵗʰ Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6ᵗʰ Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6ᵗʰ Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6ᵗʰ Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that

> there was "cause" for him to not follow the procedural rule and that
> he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357

(6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002). A habeas petitioner

can overcome a procedural default by showing cause for the default and prejudice from the asserted

error. *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015).

Petitioner's claim is ineffective assistance of trial counsel by failing to adequately cross-

examine the victim-witness with the documents he now presents and/or to introduce those

documents in evidence. Ohio has two methods for litigating claims of ineffective assistance of

trial counsel. If the claim is based on facts of record at the time of direct appeal, the claim must

be presented in that forum or be later barred by *res judicata*. *State v. Perry*, 10 Ohio St. 2d 175

(1967). If, on the other hand, the claim depends on facts outside (*dehors*) the appellate record, it

must be presented in a timely petition ford post-conviction relief under Ohio Revised Code §

2953.21.

Petitioner here concedes that the documentary evidence on which he relies was produced

in pre-trial discovery; his attorney's failure to engage in what he believes was appropriate cross-

examination could be shown from the trial transcript. Thus the ineffective assistance of trial

counsel claim he makes in the Amended Petition should have been raised on direct appeal, but was

not.

Petitioner's Reply is spent attempting to excuse this default by showing actual innocence;

his failure to persuade is detailed above with respect to the statute of limitations question. Another

possible excuse could be ineffective assistance of appellate counsel. Carlton raised that claim in

his Application for Reopening (See Omitted Assignments of Error 2 & 3, Application for

Reopening, State Court Record, ECF No. 31, Ex. 8). The First District denied relief on that claim.

Under 28 U.S.C. § 2254(d)(1), its decision is entitled to deference unless shown to be contrary to or an unreasonable application of clearly established Supreme Court precedent. *Strickland v. Washington,* 466 U.S. 668 (1984); *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751-52). Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003). *Williams v. Bagley,* 380 F.3d 932, 971 (6th Cir. 2004), *cert. denied,* 544 U.S. 1003 (2005); see *Smith v. Murray*, 477 U.S. 527 (1986). Appellate counsel could well have understood that trial counsel would not want to have been seen as badgering a badly-injured victim-witness about statements she allegedly made to others (a social worker and a police officer) when she was completely free to repudiate or change the prior statements.

The First District's denial of the 26(B) Application is a reasonable application of *Strickland v. Washington,* 466 U.S. 668 (1984), and is therefore entitled to deference.

**Trial Court Jurisdiction**

Carlton spends considerable space in his Reply arguing the trial court did not have jurisdiction of his case.

Ohio Common Pleas courts are courts of general jurisdiction, which means they have authority to decide their own jurisdiction in the first instance. *State ex rel. Winnefeld v. Court of Common Pleas of Butler County,* 159 Ohio St. 225 (1953); *State ex rel Miller v. Court of Common Pleas of Lake County*, 151 Ohio St. 397 (1949). Common Pleas courts have exclusive original

jurisdiction to try felony offenses indicted in their respective counties. It is beyond doubt that the Hamilton County Court of Common Pleas had subject matter jurisdiction over this case and personal jurisdiction to try Carlton once he was brought before them after arrest on the warrant on indictment.

But Carlton claims the court lost that jurisdiction once he received ineffective assistance of trial counsel. This claim is unavailing for a number of reasons.

First of all, the lack of jurisdiction claim is not pleaded in the Amended Petition, which is limited to the claim of ineffective assistance of trial counsel. A claim cannot be added to a habeas corpus case by including it in the reply. *Jalowiec v. Bradshaw*, 657 F.3d 293 (6th Cir. 2011), *citing Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005).

Secondly, the claim is without merit. Carlton raised this claim[7] by filing an original petition for writ of habeas corpus in the Supreme Court of Ohio (Petition, State Court Record, ECF No. 27, Ex. 61). The Ohio Supreme Court denied the Petition without opinion. *Id.* at Ex. 64. It did not rely on its own holding in *Boszik v. Hudson*, 110 Ohio St. 3d 245 (2006), that an Ohio trial court does not lose jurisdiction because of claims involving denial of counsel or ineffective assistance of trial counsel which Carlton says is contrary to Supreme Court law clearly established in *Johnson*. *Id.* at PageID 1435. This Court need not resolve that question because the Supreme Court of Ohio did not rely on *Boszik* and in any event was writing there about the Ohio habeas corpus, not federal habeas.

Carlton's argument fares no better by direct reliance on *Johnson v. Zerbst*. His claim is that failure to appoint counsel when required by law deprives the state court of jurisdiction and thus permits federal habeas corpus. The Supreme Court never extended that holding to claims of

---

[7] Petitioner may have raised this claim in both the Common Pleas Court and the First District Court of Appeals, but he relies in his Reply on raising it in the Supreme Court of Ohio in an original petition.

ineffective assistance of trial counsel.  Moreover, it abandoned the requirement that the federal court find a lack of jurisdiction in the state court of conviction in order to grant habeas relief in *Waley v. Johnson,* 316 U.S. 101 (1942)(per curiam), only four years after *Johnson.*

In sum, Carlton's claim that the trial court was deprived of jurisdiction when his attorney did not cross-examine the victim-witness as he believes would have been appropriate is (1) not properly presented because not in the Amended Petition and (2) fails to state a claim under *Johnson.*

**Conclusion**

On the basis of the foregoing analysis, the Magistrate Judge respectfully recommends the Amended Petition be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

October 4, 2021.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received.  Such

objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #